**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **THOMAS HENLEY,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:14-CV-1080-L** |
| | § | |
| **SAUL M. MEYER,** *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiff Thomas Henley's Motion to Remand and for Reimbursement

of Expenses, filed May 8, 2014.  After careful consideration of the motion, response, briefs, record,

and applicable law, the court **grants** Plaintiff Thomas Henley's Motion to Remand, **denies** his

Motion for Reimbursement of Expenses, and **remands** this action to the 44th Judicial District Court

of Dallas County, Texas.

**I.      Background**

Thomas Henley ("Plaintiff" or "Henley"), a Texas citizen, originally filed this action in the

44th Judicial District Court of Dallas County, Texas, against his business partners, Saul M. Meyer,

Matthew O'Reilly, and Richard Ellman, as well as several of their partnership entities (collectively

the "Aldus Entities" and, together with the individual defendants, the "Aldus Defendants").  Meyer,

O'Reilly, and Ellman are citizens of Texas.  Plaintiff also sued Executive Risk Indemnity, Inc.

("ERI"), a Delaware corporation having its principal place of business in New Jersey.

In Plaintiff's Original Petition ("Petition"), which is the live pleading in this action, Henley

alleges that he joined Aldus Equity, a Dallas-based private equity firm, as a partner in 2005.  Aldus

**Memorandum Opinion and Order – Page 1**

Equity grew tremendously until 2009, when Meyer pleaded guilty to felony fraud charges in New York and admitted guilt with respect to similar allegations pending in New Mexico. Meyer thereafter resigned from the firm, and a number of Aldus Equity's clients filed lawsuits against the firm and its remaining partners. The firm maintained insurance under Global Financial Services/Investment Company Professional and Management Liability Policy No. 6803-5389 (the "Policy") issued by ERI to protect the partners against lawsuits, but ERI refused to provide coverage under the Policy for any of the lawsuits arising out of Meyer's misconduct. Accordingly, Aldus Equity filed a lawsuit against ERI. Plaintiff alleges that ERI and the remaining partners, O'Reilly, Ellman, and Henley, agreed to settle the firm's lawsuit against ERI and agreed to a specific distribution of settlement proceeds among the partners. O'Reilly and Ellman, however, subsequently agreed to accept a cash payment from ERI and retroactively nullify the Policy. O'Reilly and Ellman refused to pay any of the settlement proceeds to Plaintiff. O'Reilly and Ellman also failed to indemnify Plaintiff in connection with a lawsuit filed in New Mexico. When Plaintiff requested that ERI provide him a defense in the New Mexico lawsuit, ERI refused and allegedly sent him a letter stating that O'Reilly and Ellman had previously entered into an agreement with ERI that precluded coverage for Plaintiff under the Policy.

When O'Reilly announced that Aldus Equity would stop paying compensation to its remaining employees and partners, Plaintiff submitted his resignation. He also allegedly stated his intent to retain his partnership interests in the firm and the Aldus Entities, as permitted by an alleged Agreement Among Owners. After Plaintiff resigned his employment, O'Reilly and Ellman refused to acknowledge his ownership interests, contending instead that they own such interests.

**Memorandum Opinion and Order – Page 2**

Based on this conduct, Plaintiff asserts claims against O'Reilly and Ellman for breach of the Agreement Among Owners, shareholder oppression, breach of fiduciary duty, promissory estoppel, and breach of contract with respect to the agreement to share settlement proceeds paid by ERI. Plaintiff further asserts claims against O'Reilly, Ellman, and various Aldus Entities for money had and received and breach of a contractual obligation to indemnify him against harm arising out of the New Mexico lawsuit.  Plaintiff sues Meyer for breach of the Agreement Among Owners and fraud. He also sues ERI for declaratory judgment, breach of contract, promissory estoppel, bad faith, and violations of the Texas Insurance Code for its failure to defend and indemnify him in the New Mexico lawsuit.

ERI removed this action to federal court on March 26, 2014, contending that, as required by 28 U.S.C. § 1332(a), complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.[1]  Although several of the Aldus Defendants are Texas citizens, ERI contends that their citizenship should be disregarded in determining diversity because they were "fraudulently misjoined." More specifically, ERI contends that Plaintiff's claims against the Aldus Defendants are wholly distinct from his claims against ERI and that joinder of the Aldus Defendants and ERI is procedurally improper under state law.

Plaintiff filed a motion to remand on May 8, 2014, in which he argues that complete diversity does not exist because Meyer, O'Reilly, Ellman, and several of the Aldus Entities are citizens of Texas. Plaintiff contends that the Aldus Defendants were not fraudulently misjoined and their citizenship cannot be disregarded for purposes of determining diversity.  The issues pertaining to removal have been fully briefed, and the motion to remand is now ripe for determination.

---

[1] ERI filed an amended notice of removal two days later, on March 28, 2014, asserting the same grounds for federal jurisdiction.

**Memorandum Opinion and Order – Page 3**

Meyer and the Aldus Defendants also have filed separate motions to dismiss or, in the alternative, to compel arbitration. The parties, however, agree that the court should not reach these motions unless and until it denies Plaintiff's motion to remand. Because the court grants Plaintiff's motion to remand, it does not reach the other pending motions. *See Corp. Relocation, Inc. v. Martin*, No. 3:06-CV-232-L, 2006 WL 4101944, at *6 (N.D. Tex. Sep. 12, 2006) ("A court must have subject matter jurisdiction before it may compel arbitration.")

## II.     Subject Matter Jurisdiction

A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," or over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332. Diversity of citizenship exists between the parties only if each plaintiff has a different citizenship from each defendant. *Getty Oil Corp. v. Ins. Co. of North America*, 841 F.2d 1254, 1258 (5th Cir. 1988). Otherwise stated, 28 U.S.C. § 1332 requires complete diversity of citizenship; that is, a district court cannot exercise jurisdiction if any plaintiff shares the same citizenship as any defendant. *See Corfield v. Dallas Glen Hills, LP*, 355 F.3d 853, 857 (5th Cir. 2003) (citation omitted).

Federal courts may also exercise subject matter jurisdiction over a civil action removed from a state court. Unless Congress provides otherwise, a "civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Any doubts as to the propriety of the removal are to be construed strictly in favor of remand. *Manguno v. Prudential Prop. & Cas. Ins.*

*Co.*, 276 F.3d 720, 723 (5th Cir. 2002).  "The burden of establishing subject matter jurisdiction in

federal court rests on the party seeking to invoke it."  *St. Paul Reinsurance Co. v. Greenberg*, 134

F.3d 1250, 1253 (5th Cir. 1998) (footnote omitted).  Because ERI removed this case to federal court,

it has the burden of establishing subject matter jurisdiction.

## III.    Improper Joinder

A party seeking to remove an action to federal court on the basis of fraudulent or improper

joinder bears a heavy burden.  *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir.

2004) (en banc).  In *Smallwood*, the Fifth Circuit "adopt[ed] the term 'improper joinder' as being

more consistent with the statutory language than the term 'fraudulent joinder,' which has been used

in the past.  Although there is no substantive difference between the two terms, 'improper joinder'

is preferred."  *Id.* at 571 n.1.  Accordingly, the court uses the term "improper joinder" in this

opinion.

As previously stated, a federal court has jurisdiction over civil actions in which there is

complete diversity of citizenship between the parties and the amount in controversy exceeds

$75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).  In considering citizenship, the court

considers only the citizenship of real and substantial parties to the litigation; it does not take into

account nominal or formal parties that have no real interest in the litigation.  *Navarro Sav. Ass'n v.

Lee*, 446 U.S. 458, 460-61 (1980).  The citizenship of a party that is improperly joined also must be

disregarded in determining whether diversity of citizenship exists.  *Johnson v. Heublein*, 227 F.3d

236, 240 (5th Cir. 2000).

The Fifth Circuit has traditionally recognized two grounds on which a court can find that a

defendant was improperly joined:  "(1) actual fraud in the pleading of jurisdictional facts, or (2)

**Memorandum Opinion and Order – Page 5**

inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999)).   ERI does not rely on either of these grounds in this case.   Instead, ERI contends that the doctrine of "fraudulent misjoinder" established by the Eleventh Circuit in *Tapscott v. MS Dealer Service Corporation*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated in part on other grounds by Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2000), supports a finding of improper joinder.

The viability of the fraudulent misjoinder doctrine is an open question.   The Fifth Circuit has never expressly adopted the theory, although it has indicated that it might do so in an appropriate case.   *See Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 532-33 (5th Cir. 2006); *In re Benjamin Moore & Co.*, 309 F.3d 296, 298 (5th Cir. 2002).   Additionally, numerous district courts in the Fifth Circuit have assumed, without necessarily deciding, that fraudulent misjoinder is a possible ground to support a finding of improper joinder.   *See, e.g., Martinson v. Total Petrochemicals & Refining USA, Inc*., No. H-14-555, 2014 WL 2169970, at *2 (S.D. Tex. May 23, 2014); *Palos v. Vick*, No. SA-13-CV-805-XR, 2013 WL 5740287, at *3 (W.D. Tex. Oct. 22, 2013); *Salazar v. Lopez*, No. 3:13-CV-188-M, 2013 WL 1124302, at *1 (N.D. Tex. Mar. 18, 2013); *J.O.B Investments, LLC v. Gootee Services, LLC,* 908 F. Supp. 2d 771, 774 (E.D. La. 2012); *Tex. Instruments, Inc. v. Citigroup Global Mkts., Inc*., 266 F.R.D. 143, 147 (N.D. Tex. 2010); *Wells Fargo Bank, N.A. v. Am. Gen. Life Ins. Co.*, 670 F. Supp. 2d 555, 562 (N.D. Tex. Nov 18, 2009); *Palermo v. Letourneau Techs., Inc*., 542 F. Supp. 2d 499, 515 (S.D. Miss. 2008); *Schuchmann v. Miraglia*, No. 3:04-CV-1057-B, 2004 WL 2626532, at *3 (N.D. Tex. Nov. 16, 2004).   For purposes

of the pending motion to remand, this court similarly assumes, without deciding, that fraudulent misjoinder may support a finding of improper joinder.

Courts that recognize the fraudulent misjoinder doctrine as viable engage in a two-step analysis that asks: (1) has any party been misjoined with another party in violation of the applicable joinder rules; and, (2) is the misjoinder sufficiently "egregious" to rise to the level of a fraudulent misjoinder? *See, e.g., Tex. Instruments*, 266 F.R.D. at 147-48. Given that the Fifth Circuit has not expressly adopted the doctrine of fraudulent misjoinder, it has not had the opportunity to determine whether federal or state joinder rules govern the analysis. The district courts in Texas that have considered the issue apparently agree that the state rules should apply. *See, e.g., Martinson*, 2014 WL 2169970, at *2, n.1; *Salazar*, 2013 WL 1124302, at *2 n.10. Further, at least one district court has noted that the question of whether to apply Texas rules or federal rules to a misjoinder analysis is "largely academic" because the state rule is practically identical to its federal counterpart. *Tex. Instruments*, 266 F.R.D. at 148, n.3. The court agrees that the Texas joinder rules are not substantially different from the federal joinder rules and thus uses the state rules in its analysis. *See Crockett*, 436 F.3d at 533 (noting that Texas has adopted the same requirements for proper joinder as set forth in the federal rules).

Under Texas Rule of Civil Procedure 40(a), claims against multiple defendants may be joined in one action "if there is asserted against them jointly, severally, or in the alternative any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action." TEX. R. CIV. P. 40(a). Rule 40(a) thus establishes two requirements for joining claims against multiple defendants: (1) a "same transaction" requirement and (2) a "common question" requirement. The

"same transaction" requirement is governed by a logical-relationship test that is borrowed from federal law. *Tex. Instruments*, 266 F.R.D. at 147-48. The "common question" requirement is satisfied by the presence of a single common question of law or fact. *Id.* To the extent ERI suggests that language in Texas Rule 40(a) requiring the right to relief to be asserted against the defendants "jointly, severally, or in the alternative" constitutes a third requirement of permissive joinder, *see* Def. Resp. 10, its suggestion is misplaced. This language does not further limit the scope of permissible joinder beyond what is allowed by the "same transaction" requirement; it merely emphasizes the broad scope of permissible joinder under the Texas Rules. *Tex. Instruments*, 266 F.R.D. at 149, n.5.

Additionally, mere misjoinder does not constitute fraudulent misjoinder. *Tapscott*, 77 F.3d at 1360. Rather, the misjoinder must be "egregious." *Id.*; *see also Salazar*, 2013 WL 1124302, at *2 n.8 (noting apparent unanimity among courts in applying the egregiousness standard to fraudulent misjoinder analysis). It is not entirely clear what constitutes egregiousness. Some courts have indicated that the misjoined claims must be "wholly distinct" or have "no real connection" to each other such that their joinder "border[s] on a sham." *Tapscott*, 77 F.3d at 1360. Other courts have explained that misjoinder is egregious only if it is "grossly improper and without any arguable basis other than to defeat diversity." *Martinson*, 2014 WL 2169970, at *3. Indeed, the showing of "egregiousness" required presents such a high bar that it has rarely been satisfied. *See Tex. Instruments*, 266 F.R.D. at 152 (observing "the overwhelming majority of those cases [removed to federal court on grounds of fraudulent misjoinder] have been remanded to state court, often on the ground that even if the parties have been misjoined, such misjoinder is not so egregious as to be fraudulent."); *see also Salazar*, 2013 WL 1124302, at *2 ("Although the claims appear to have been

**Memorandum Opinion and Order – Page 8**

properly joined in this case . . . , the Court rests its conclusion on narrower grounds. . . . The joinder . . . was not so egregious as to constitute fraudulent misjoinder."); *Oesch v. Woman's Hosp. of Texas*, No. H-11-770, 2012 WL 950109, at *5 (S.D. Tex. Mar. 20, 2012) (same).

## IV.    Discussion

### A.    Defects in the Removal Notice

Plaintiff initially asserts that remand is required because ERI's notice of removal failed to identify the place of business for each of the corporate defendants and thus failed to properly allege complete diversity.  The court observes, however, that many of the "corporate defendants" appear to be partnerships and limited liability companies.  *See* Orig. Pet. 3-5, ¶¶ 5-23.  The citizenship of these entities is not dependent upon their place of business.  A partnership or unincorporated association's citizenship is determined by the citizenship of each of its partners.  *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990).  The citizenship of a limited liability company is determined by the citizenship of all of its members.  *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008).  Moreover, Plaintiff's objections to the sufficiency of the notice of removal are procedural in nature and are deemed waived because he did not file his motion to remand within thirty days of the action being removed to federal court.  *See* 28 U.S.C. § 1447(c); *In re Shell Oil Co.*, 932 F.2d 1518, 1523 (5th Cir. 1991).

### B.    Contentions of the Parties regarding Fraudulent Misjoinder

ERI contends that Plaintiff's claims against the Aldus Defendants and ERI fail to satisfy the standard for joinder under Texas law.  That is, Plaintiff's claims against ERI do not arise out of the same transaction or occurrence as his claims against the Aldus Defendants or share any common question of law or fact with the claims he brings against the Aldus Defendants.  ERI further contends

that Plaintiff's claims against it lack any real connection with the controversy involving the Aldus

Defendants, and thus they are egregiously, or fraudulently, misjoined.  ERI urges the court to

disregard the citizenship of the Aldus Defendants for the purpose of determining jurisdiction and

find that complete diversity exists among the parties such that removal is proper.

Plaintiff responds that ERI's removal is improper because he has committed no fraud in

pleading jurisdictional facts and he can establish a cause of action against the Aldus Defendants.

He further argues that the Aldus Defendants are properly joined with ERI because they were jointly

involved in the occurrences that gave rise to his claims and, to the extent any defendant is not

properly joined, that misjoinder is not so egregious as to destroy diversity.  Plaintiff requests that

the court remand this case to the state court from which it was removed and that the court award him

$5,000 in costs incurred in opposing removal.

### C.      Analysis

Plaintiff's allegations against ERI and the Aldus Defendants provide a sufficient basis for

the joinder of his claims against them under state law.  Plaintiff alleges that ERI refused to provide

coverage under the Policy for a barrage of lawsuits filed by Aldus Equity's customers after Meyer

pled guilty to felony charges in New York.  *See* Orig. Pet. 10-11, ¶¶ 51, 53.  According to Plaintiff,

the firm was forced to hire legal counsel and file its own lawsuit against ERI demanding coverage

under the Policy (the "ERI Litigation").  *Id.* at 11, ¶ 54.  Plaintiff alleges that it eventually became

clear that the dispute with ERI would likely be settled and that the partners agreed to a specific

distribution of any settlement proceeds paid by ERI.  *Id.*, ¶¶ 56-57.  Plaintiff further alleges that

"O'Reilly, Ellman and ERI thereafter wrongfully attempted to resolve the ERI Litigation without

the participation of Henley (Ellman and O'Reilly's partner, and ERI's insured) by ERI making a

cash payment to purportedly retroactively nullify the ERI Policy." *Id.* at 11-12, ¶ 58. When Plaintiff was named as a defendant in the New Mexico lawsuit, he demanded that ERI provide him a defense under the Policy. ERI refused coverage and sent Plaintiff a letter stating that it refused coverage because "O'Reilly and Ellman had previously entered into a settlement agreement with ERI that precluded insurance coverage for Henley." *Id.* at 13, ¶ 67.

ERI characterizes Plaintiff's allegations as raising two distinct claims: (1) a claim against the Aldus Defendants for breach of an agreement to share settlement proceeds and (2) a claim against ERI for breach of an insurance contract. *See* Def. Resp. 9-10. It contends that the legal analysis of these disparate claims, as well as the evidence, witnesses, and discovery necessary to prove the claims, "differs greatly." This characterization essentially ignores Plaintiff's allegations that O'Reilly, Ellman and ERI conspired to settle the ERI Litigation and nullify the Policy without his consent. *See* Orig. Pet. 11-12, ¶ 58; 13, ¶ 69. It also dismisses his assertion that their joint wrongful conduct, which he contends constitutes a breach of fiduciary duty and a breach of contract, deprived him of insurance coverage for the New Mexico lawsuit. *Id.* at 16, ¶ 85. ERI cannot simply recast Plaintiff's allegations to support its arguments in favor of removal.

As set forth in the Petition, Plaintiff's allegations against ERI, O'Reilly, and Ellman arise out the same transaction, occurrence, or series of transactions or occurrences—the alleged agreement between those parties to settle the ERI Litigation without Plaintiff's consent and deprive him of coverage under the Policy. Plaintiff's allegations also involve at least one common question of law or fact, including whether ERI and the Aldus Defendants' actions were effective to retroactively nullify Plaintiff's coverage. Therefore, Plaintiff's claims are not misjoined under state law. *See*

**Memorandum Opinion and Order – Page 11**

*Oesch*, 2012 WL 950109, at *4 (declining to find procedural misjoiner where the plaintiff's different causes of action against the various defendants involved common operative facts).

Even if Plaintiff's claims against ERI and the Aldus Defendants are not properly joined, any misjoinder is not egregious.  As alleged, Plaintiff's claims against ERI, O'Reilly, and Ellman are connected by the assertion that those parties conspired to wrongfully cancel the Policy and deny coverage for the New Mexico lawsuit.  The claims are not "wholly distinct" or lacking in "real connection" to each other.  Plaintiff has alleged that ERI, O'Reilly, and Ellman acted together to deprive him of insurance coverage.  He contends that all three acted wrongfully and caused him injury when they settled the ERI Litigation without his participation and nullified the Policy without his consent.  The court concludes that ERI has not met its heavy burden to demonstrate that Plaintiff's joinder of ERI in this lawsuit is "grossly improper" or "without any arguable basis other than to defeat diversity."

Contrary to ERI's argument, the facts of this case are distinguishable from those presented by *Nsight Technologies, LLC v. Federal Insurance Co.*, No. 4:10-CV-458-Y, 2009 WL 1106868 (S.D. Miss. Apr. 23, 2009).  In *Nsight*, a business whose employee had allegedly embezzled more than $400,000 of company funds filed a single action asserting claims against the employee for conversion and against the company's insurance provider for bad-faith breach of its employee-theft insurance policy.  *Nsight*, 2009 WL 1106868, at *1.  The *Nsight* court determined that the plaintiff's claims arose "out of separate allegations of wrongdoing occurring at separate times" and that they "involve[d] different factual issues and different legal issues."  *Id.* at *4.  The court thus concluded that the plaintiff's claims against the insurance company had been improperly joined.  *Id.* at *5.  Significantly, however, the plaintiff in *Nsight* did not allege that the employee conspired with the

insurer to cause it injury or to deprive it of any benefit.  Plaintiff's claims in this case arise out of a common allegation of wrongdoing involving ERI, O'Reilly, and Ellman's joint action to settle the ERI Litigation and cancel the Policy without Plaintiff's participation.  Therefore, *Nsight* is distinguishable.

### D.  Attorney's Fees and Costs

Finally, Plaintiff seeks attorney's fees and costs incurred for obtaining a remand of this action to state court pursuant to 28 U.S.C. § 1447(c).  Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  There is no "automatic entitlement to an award of attorney's fees."  *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000).  Bad faith is not "a prerequisite to awarding attorney fees and costs."  *Id.* (citation omitted).  "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied."  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (citations omitted).

When removal is determined to be improper, courts have discretion to award attorney's fees incurred in obtaining a remand.  28 U.S.C. § 1447(c).  Here, ERI sought removal based on the theory of fraudulent misjoinder.  Although this theory has not been explicitly recognized by the Fifth Circuit, a significant body of authority exists to suggest such a theory is viable.  The legal contours of the doctrine are still developing.  While the court concludes that this case should not have been removed, it does not find that ERI lacked an objectively reasonable basis for seeking removal.

**Memorandum Opinion and Order – Page 13**

Therefore, the court determines, in exercising its discretion, that the interests of justice are not served by awarding attorney's fees and costs to Plaintiff in this case.

**V.      Conclusion**

For the reasons herein stated, the court **concludes** that the Aldus Defendants were not improperly joined to defeat diversity jurisdiction, that complete diversity of citizenship does not exist between the parties because Plaintiff and several of the Aldus Defendants are Texas citizens, and that it therefore **lacks** subject matter jurisdiction to hear this action.  Accordingly, the court **grants** Plaintiff Thomas Henley's Motion to Remand (Doc. 17) and **remands** this case to the 44th Judicial District Court of Dallas County, Texas.  Plaintiff's request for attorney's fees and costs is **denied**. The clerk of court shall effect this remand in accordance with the usual procedure.

**It is so ordered** this 16th day of January, 2015.

Sam A. Lindsay
United States District Judge